## `IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARK FITZHENRY, individually and on behalf of a class of all persons and entities similarly situated, | : : : : | Case No. 1:21-cv-2345 |
| Plaintiff, | : : | |
| v. | : : | JURY DEMANDED |
| FIRST IMPRESSION INTERACTIVE, INC., JEFFREY GILES and STVT-AAI EDUCATION, INC. d/b/a ANCORA EDUCATION | : : : : : | |
| Defendants. | | |

## FIRST AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2. Plaintiff Mark Fitzhenry ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited, pre-recorded telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4. Mr. Fitzhenry also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq*.

5. The SCTPPA also prohibits a company from making a call to a South Carolina telephone number that had been registered on the Do Not Call Registry, as Mr. Fitzhenry's was prior to receiving the call.

6. Plaintiff alleges that Defendant First Impression Interactive, Inc. ("First Impressions"), which is operated by Jeffrey Giles, made pre-recorded telemarketing calls to his cellular telephone to promote Miller-Motte College, a post-secondary school of the defendant STVT-AAI Education, Inc. d/b/a Ancora Education ("Miller-Motte") and such calls were made at their direction and subject to their control.

7. Because the calls to Plaintiff were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of proposed nationwide classes of other persons who were sent the same illegal telemarketing calls.

8. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

9. Plaintiff Mark Fitzhenry is a resident of South Carolina.

10. Defendant First Impression Interactive, Inc. is an Illinois corporation with a principal place of business in Hinsdale, IL in this District.

11. Defendant Jeffrey Giles is an individual residing at 735 S. Quincy St. in Hinsdale, IL 60521.

12. Defendant STVT-AAI Education, Inc. is registered in Illinois as a foreign corporation.

## Jurisdiction & Venue

13. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the SCTPPA claims as they arise from the same case and controversy, the telemarketing campaign of the Defendants.

14. The Court has personal jurisdiction over the Defendants because they are residents of this District and/or conduct telemarketing activity from Illinois, where First Impressions only office is located.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and First Impressions maintains its principal place of business in this district and the telemarketing conduct at issue was directed from here.

## The Telephone Consumer Protection Act

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

3

17. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

18. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

19. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

20. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

21. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

4

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

22. Mr. Giles is the owner and operator of First Impressions and is liable for its conduct.

23. Under the TCPA, an individual such as Mr. Giles, may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

*See* 47. U.S.C. § 217 (emphasis added).

24. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

25. Mr. Giles personally participated in the actions complained of by (a) participating in the selection of the phone numbers that would be called; (b) working on the scripting that would be used on the call and (c) selecting the dialing equipment used to make the calls.

The SCTPPA

26. On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. seq*.

27. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

28. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. S.C. Code § 37-21-80.

## Factual Allegations

29. First Impression markets and sells educational products and services to consumers and did so for Miller-Motte.

30. First Impression uses telemarketing on these calls.

31. First Impression's telemarketing efforts include the use of automated pre-recorded message calls.

Call to Mr. Fitzhenry

32. Mr. Fitzhenry is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

33. On April 16, 2021, Mr. Fitzhenry received a pre-recorded call on his cellular telephone number, (843) 637-XXXX.

34. The number called had been on the National Do Not Call Registry since February of 2019.

35. The pre-recorded message stated:

> I'm calling from EDU Matcher on a quality recorded line to follow up on your recent registration on youremployment.com, where you indicated you were interested in furthering your education. I'm here to help you today to determine school and education options for you from the over 35 schools with whom EDU Matcher has business relationships. I have a few questions that I need to ask to see what schools we can find for you. I'll be really quick. Okay?

36. Mr. Fitzhenry had not registered on "youremployment.com".

37. The company was not properly identified in the pre-recorded message, so Mr. Fitzhenry responded to the recorded message.

38. During the subsequent sales pitch, Mr. Fitzhenry spoke with a representative from Miller-Motte Technical College, a client of First Impression.

39. On the call, Miller-Motte attempted to secure Mr. Fitzhenry's attendance at their school.

40. By going through this verification process, Mr. Fitzhenry was able to identify First Impression as the company that made the call.

41. Mr. Fitzhenry had no prior relationship with either company and did not provide his prior express written consent.

### **Miller-Motte Liability for First Impression's Conduct**

42. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

43. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

44. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically

7

recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

45. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Miller-Motte may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

46. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

47. Miller-Motte knowingly and actively accepted business that originated through the illegal telemarketing call from First Impressions.

48. Miller-Motte had the ability to identify the fact that First Impressions was calling individuals on the National Do Not Call Registry.

49. Indeed, despite the fact that First Impressions has received repeated complaints alleging violations of the TCPA, Miller-Motte continued to work with First Impressions.

50. Moreover, Miller-Motte maintained interim control over the actions of the party that made the call.

51. Miller-Motte gave interim instructions to First Impressions by providing (a) information regarding the type of candidates they could call, including level of education, types of education an individual would be interested in, and (b) the script that First Impressions would have to use.

52. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

53. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

54. The classes of persons Plaintiff propose to represent are tentatively defined as:

PRE-RECORDED CELL PHONE CLASS

>All persons within the United States to whom (a) Defendants, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) using an artificial or prerecorded voice; (c) to a phone registered to a cellular telephone service or any other service for which the person is charged for the call; (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

SCTPPA CLASS:

>All persons with a South Carolina area code to whom (a) at any time from May 18, 2018 (b) Defendants, or someone acting on their behalf (c) placed at least one telephone solicitation to a number registered on the National Do Not Call Registry.

55. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

56. The classes as defined above are identifiable through phone records and phone number databases that will be obtained through discovery.

57. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

58. Plaintiff is a member of both classes.

59. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether the Defendants violated the TCPA by using pre-recorded telemarketing to call cellular phones;

    b. Whether the Defendants placed calls without obtaining the recipients' prior consent for the call;

    c. Whether the Defendants violated the SCTPPA by making calls to South Carolina telephone numbers registered with the National Do Not Call Registry; and

10

      d.    Whether Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

60.    Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by the Defendants and are based on the same legal and remedial theories.

61.    Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62.    In fact, the Plaintiff have foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

63.    The actions of the Defendants are generally applicable to the classes and to the Plaintiff.

64.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

65.    The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

### Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)

66.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

67. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the class using an artificial or prerecorded voice.

68. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violation of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the classes presumptively are entitled to an award of $500 in damages for each and every call made using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

69. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the class are entitled to an award of up to treble damages.

70. Plaintiff and members of the classes are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers or numbers for which the recipient is charged for the call using an artificial or prerecorded voice in the future.

## Count Two:
## Violation of the SCTPPA

71. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

72. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to an area code of the state of South Carolina to a number that is registered on the National Do Not Call Registry.

73. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA, as well as attorneys' fees and costs. S.C. Code § 37-21-80.

### Relief Sought

For themselves and all class members, Plaintiff request the following relief:

A. Certification of the proposed classes;

B. Appointment of the Plaintiff as representatives of the classes;

C. Appointment of the undersigned counsel as counsel for the classes;

D. A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and SCTPPA;

E. An order enjoining Defendants and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the classes of damages, attorneys' fees, and costs, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

                PLAINTIFF,
                By their attorneys,

                **/s/ *Anthony I. Paronich***
                Anthony I. Paronich
                Paronich Law, P.C.
                350 Lincoln Street, Suite 2400
                Hingham, MA 02043
                (508) 221-1510

anthony@paronichlaw.com

Avi R. Kaufman
KAUFMAN P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com